(191 P.3d 1130)

No. 99,023

STATE OF KANSAS, *Appellee*, v. CYNTHIA CASADY, *Appellant*.

Opinion filed September 12, 2008.

*Shawn E. Minihan*, of Kansas Appellate Defender Office, for appellant.

*Charles D. Baskins*, county attorney, and *Stephen N. Six*, attorney general, for appellee.

Before MALONE, P.J., BUSER, J., and LARSON, S.J.

LARSON, J.: In this appeal, we are asked to determine whether the $100 application fee imposed upon defendants who seek appointed counsel from the Board of Indigents' Defense Services (BIDS) violates an indigent defendant's rights under the Sixth and Fourteenth Amendments to the United States Constitution and § 10 of the Kansas Constitution Bill of Rights.

Although this issue was not raised below, we reach the constitutional arguments and hold that K.S.A. 22-4529 is constitutional for the several reasons we state herein.

The record reflects that Cynthia Casady was charged in a three-count complaint with possession of a prescription drug without a prescription, possession of marijuana, and possession of drug paraphernalia. On May 9, 2007, pursuant to a plea agreement, Casady pled no contest to illegal possession of a prescription drug and the State dismissed the other two charges.

Casady's motion for a downward departure by her court-appointed counsel was denied, and she was sentenced to 30 months' imprisonment in the custody of the Department of Corrections. The court assessed a $100 BIDS application fee which was not objected to by Casady. The district court waived the BIDS attorney fee after determining Casady was unable to pay such amount. The

district court ordered Casady's court costs and the $100 BIDS application fee to be paid out of a $500 cash appearance bond that had been deposited with the clerk of the court.

Notice of appeal was timely filed.

Casady's only argument on appeal is that K.S.A. 22-4529 is an unconstitutional recoupment statute that violates the Sixth and Fourteenth Amendments of the United States Constitution and § 10 of the Kansas Constitution Bill of Rights because it imposes a mandatory $100 application fee on all defendants who seek appointed counsel.

Casady argues we have jurisdiction to review her argument even though she did not object to the assessment of the fee at sentencing or raise any constitutional issues below because it is necessary to serve the ends of justice or to prevent the denial of a fundamental right relying on *State v. Puckett*, 230 Kan. 596, 640 P.2d 1198 (1982).

The State argues that the BIDS application fee assessment should be affirmed because Casady did not object below or present any evidence that the imposition of the fee would cause manifest hardship. The State further argues the statute is constitutional because it satisfies all the requirements for a recoupment statute set forth in *Olson v. James*, 603 F.2d 150 (10th Cir. 1979).

Additionally, the State argues the district court properly examined the burden that payment of both the BIDS application fee and BIDS attorney fee would impose upon Casady when it determined the assessment of the BIDS application assessment would not be unduly burdensome but specifically found "that the defendant's financial condition is such that she can not pay the BIDS attorney fees."

The State in its brief also relied upon our Court of Appeals opinion in *State v. Hawkins*, 37 Kan. App. 2d 195, 152 P.3d 85 (2007), that stated: "At a minimum, K.S.A. 2006 Supp. 22-4529 requires a criminal defendant to object to the payment of the BIDS application fee on the basis of a manifest hardship."

Because the State fully responded to Casady's constitutional arguments; our Supreme Court accepted review and has recently opined on the BIDS application fee process in *State v. Hawkins*,

285 Kan. 842, 176 P.3d 174 (2008); and K.S.A. 22-4529 is utilized in a large number of criminal cases, we reach and consider the issue of its constitutionality.

Whether a statute is constitutional is a question of law over which appellate courts have unlimited review. *Tolen v. State*, 285 Kan. 672, 673, 176 P.3d 170 (2008). We are further guided by the following rules in considering the constitutionality of a statute:

" ' "The constitutionality of a statute is presumed. All doubts must be resolved in favor of its validity, and before the act may be stricken down it must clearly appear that the statute violates the constitution. In determining constitutionality, it is the court's duty to uphold a statute under attack rather than defeat it. If there is any reasonable way to construe the statute as constitutionally valid, that should be done. A statute should not be stricken down unless the infringement of the superior law is clear beyond reasonable doubt." ' [Citation omitted.]" *State v. Whitesell*, 270 Kan. 259, 268, 13 P.3d 887 (2000).

The applicable statute in issue in this case, K.S.A. 22-4529, states in its entirety:

"Any defendant entitled to counsel pursuant to K.S.A. 22-4503, and amendments thereto shall pay an application fee in the amount of $50 for the period commencing on the effective date of this act and ending on June 30, 2004, and the amount of $100 on or after July 1, 2004, to the clerk of the district court. If it appears to the satisfaction of the court that payment of the application fee will impose manifest hardship on the defendant, the court may waive payment of all or part of the application fee. All moneys received pursuant to this section shall be remitted to the state treasurer in accordance with the provisions of K.S.A. 75-4215, and amendments thereto. Upon receipt of each such remittance, the state treasurer shall deposit the entire amount in the state treasury to the credit of the indigents' defense services fund. If the defendant is acquitted or the case is dismissed, any application fee paid pursuant to this section shall be remitted to the defendant."

The record further reflects that when Casady requested the appointment of counsel the application she signed on March 27, 2007, contained the following statement:

"C. Repayment to the State
"The court shall take into account the financial resources and the nature of the burden that payment of such sum will impose. Any person who has been required to pay such sum and who is not willfully in default may petition the sentencing court to waive payment of any remaining balance or portion thereof."

The precise procedure outlined in the recent *Hawkins* case by the Court of Appeals, 37 Kan. App. 2d at 197-201, and the Kansas Supreme Court opinion, 285 Kan. at 849-54, was not followed in our case with the BIDS application fee being assessed at the time of sentencing. However, the district court raised Casady's financial position *sua sponte* and determined that she was not able to pay the BIDS attorney fee but there were funds available from her $500 cash bond being held by the clerk from which the BIDS application fee was ordered paid.

We need not recite in their entirety the holdings of the *Hawkins* case, but in response to Casady's argument here that the decision in *State v. Robinson*, 281 Kan. 538, 132 P.3d 934 (2006), governed as to both the BIDS attorney fee and the application fee, Justice Johnson, in *Hawkins*, 285 Kan. at 851, opined:

"In short, the provisions of K.S.A. 2006 Supp. 22-4513 upon which *Robinson* was based were not intended to apply to the application fee. Instead, a determination is to be made at the time that a defendant applies for counsel as to whether 'payment of the application fee will impose manifest hardship on the defendant.' K.S.A. 2006 Supp. 22-4529."

While the district court in our case did not use the "manifest hardship" wording, it has been shown that Casady's financial condition was appropriately considered when the BIDS application fee was assessed.

Our review of the two *Hawkins'* opinions, which district judges receiving requests for court-appointed counsel are obligated to follow in determining whether to assess a BIDS application fee, shows that K.S.A. 22-4529 was constitutionally applied by the district court in the appeal before us.

When district courts follow the teachings and direction of the *Hawkins* opinions, the wording of K.S.A. 22-4529 passes constitutional muster as has been directed by the Tenth Circuit Court of Appeals and the United States Supreme Court.

Our analysis of those decisions begins with recognizing that K.S.A. 22-4529 *is* a recoupment statute because it is assessed to reimburse the State of Kansas for portions of the cost of a defendant's legal representation. A recent unpublished decision from our court, *State v. Stevens*, No. 97,640, filed June 20, 2008, held that

the BIDS application fee was assessed for recoupment of money but is not a part of the sentence imposed and is not punitive in nature. This holding is supported by the fact that although the application fee may be assessed at the time the defendant applies for court-appointed counsel, the fee is refunded to the defendant if he or she is acquitted or the case is dismissed. *Hawkins*, 285 Kan. at 851. Although K.S.A. 22-4529 may be a recoupment statute, it is not unconstitutional if the necessary safeguards exist and are applied.

In arguing K.S.A. 22-4529 is unconstitutional as written, Casady contends it is because the BIDS application fee is automatically assessed. The plain wording in the statute that "[i]f it appears to the satisfaction of the court that payment of the application fee will impose manifest hardship on the defendant, the court may waive payment of all or part of the application fee" shows Casady's argument is erroneous. The application fee is not to be automatically assessed.

In fact, K.S.A. 22-4529 is constitutional as tested against the guidelines established by *Olson v. James*, 603 F.2d 150 (10th Cir. 1979), for analyzing recoupment statutes. The *Olson* court held that an earlier Kansas BIDS attorney fee statute was unconstitutional in part because of "its lack of proceedings which would determine the financial condition of the accused." 603 F.2d at 155.

The *Olson* decision relied in part on an earlier decision involving a Kansas statute, *James v. Strange*, 407 U.S. 128, 32 L. Ed. 2d 600, 92 S. Ct. 2027 (1972), but principally on *Fuller v. Oregon*, 417 U.S. 40, 40 L. Ed. 2d 642, 94 S. Ct. 2116 (1974), which upheld an Oregon statutory scheme for recoupment by the state from a convicted defendant of the cost of providing him or her with effective representation of counsel. The wording of *Fuller v. Oregon* states: "Those who remain indigent or for whom repayment would work 'manifest hardship' are forever exempt from any obligation to repay." 417 U.S. at 53.

The *Olson v. James* decision set forth the following general guides which were gleaned from *James v. Strange* and *Fuller v. Oregon*:

"[1] First, a requirement of repayment is to be imposed only upon a convicted (not an acquitted) defendant or one whose conviction is reversed on appeal.

"[2] Second, a court should not order a convicted person to pay these expenses unless he is able to pay them or will be able to pay them in the future considering his financial resources and the nature of the burden that payment will impose. If a person is unlikely to be able to pay, no requirement to pay is to be imposed.

"[3] Third, a convicted person on whom an obligation to repay has been imposed ought at any time be able to petition the sentencing court for remission of the payment of costs or any unpaid portion thereof. The court should have the power to issue remittitur if payment will impose manifest hardship on the defendant or his immediate family.

"[4] Fourth, if the convicted person shows that his default was not attributable to an intentional refusal to obey the order of the court or to a failure on his part to make a good faith effort to make the payment, he ought not be held in contempt." 603 F.2d at 155.

K.S.A. 22-4529, when applied under the directions of our recent *Hawkins* opinions, complies with the directions of *Olson v. James* which are necessary to allow a recoupment statute to be constitutional.

The last sentence of the statute satisfies the fact that payment of the BIDS application fee is to be imposed only on a convicted defendant.

The language of K.S.A. 22-4529 which states: "[i]f it appears to the satisfaction of the court that payment of the application fee will impose manifest hardship on the defendant, the court may waive payment of all or part of the application fee" shows the manifest hardship test is to be applied not only at the time the application fee may be assessed but at any time during the proceedings wherein payment of such a fee remains the obligation of the defendant.

The application for counsel made by Casady in this case specifically stated that "any person who has been required to pay such sum and who is not willfully in default may petition the sentencing court to waive payment of any remaining balance or portion thereof." This shows the district court's continuing jurisdiction over the assessment and collection of the BIDS application fee. This satisfies the third paragraph of the *Olson v. James* guides previously set forth.

There is no direct statement in K.S.A. 22-4527 relating to a contempt finding against a defendant as is referred to in paragraph [4] of the *Olson v. James* guides. But, we point out that the Kansas Constitution Bill of Rights § 16 specifically prohibits a person from being imprisoned for failure to pay a debt as it states: "No person shall be imprisoned for debt, except in cases of fraud." We are further bound by the teachings of *Bearden v. Georgia*, 461 U.S. 660, 76 L. Ed. 2d 221, 103 S. Ct. 2064 (1983), which we followed in *City of Wichita v. Lucero*, 255 Kan. 437, 874 P.2d 1144 (1994), in an opinion which relied on the following quote from *State v. Higgins*, 240 Kan. 756, 759, 732 P.2d 760 (1987): "In recent years, the courts in this country have taken a rather firm position holding that it is constitutionally impermissible to incarcerate an indigent criminal defendant merely because he does not have the money to pay the fine or make restitution as a condition of his probation." See also *State v. Ferguson*, 271 Kan. 613, 618, 23 P.3d 891 (2001) (It is an abuse of discretion when the court " 'automatically' revokes probation due to nonpayment of restitution."); *State v. Duke*, 10 Kan. App. 2d 392, 699 P.2d 576 (1985) (automatic revocation and imprisonment of a probationer is constitutionally prohibited without a full inquiry of the reasons for failure to satisfy a financial obligation).

We are satisfied that constitutionally required court consideration for the assessment and collection of a BIDS application fee is present in the provisions of K.S.A. 22-4529 to satisfy all constitutional mandates of the Kansas Constitution Bill of Rights and the United States Constitution.

The district court is affirmed.